FILED
27 JAN 31 PM 5:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| JERRY LACEY, | }<br>} |
| Plaintiff, | }<br>} |
| v. | }   CASE NO. CV 94-B-0901-J |
| LORILLARD TOBACCO COMPANY, INC.; R.J. REYNOLDS TOBACCO COMPANY; PHILIP MORRIS, INCORPORATED, et al., | }<br>}<br>}<br>} |
| Defendants. | |

ENTERED
FEB 03 1997

## MEMORANDUM OPINION

Currently before this court is the motion of the defendants, Lorillard Tobacco Company, Inc., et al., for summary judgment. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that this motion is due to be granted.

Plaintiff Jerry Lacey, an Alabama resident, seeks equitable, compensatory and punitive relief through a series of substantive claims as well as a conspiracy claim and a request that a class action be certified. Count I of the Complaint seeks an injunction compelling defendants to disclose to plaintiff and all smokers in Alabama "all additives, additions and/or additional substances" placed by defendants in cigarettes sold in Alabama. (Compl. ¶ 15). Count II seeks compensatory and punitive damages, alleging that the defendants knew cigarettes sold by them in Alabama had been "adulterated with additives, additions and additional substances" but that the defendants did not disclose "the nature, type, extent and identity" of these additions to smokers in Alabama and, in fact, that defendants "suppressed" this information from Alabama smokers.

33

(Compl. ¶ 18). Count III alleges that the defendants have unconscionably and unreasonably manufactured cigarettes for sale in Alabama without disclosing the additives and additional substances placed in cigarettes during their manufacture. (Compl. ¶ 21). Count III, therefore, seeks injunctive relief requiring defendants to disclose "the nature, type, extent and identity of such additives, additions and/or additional substances." (Compl. ¶ 22). Count IV alleges a civil conspiracy among defendants to suppress from Alabama cigarette smokers the "true composition" of the defendants' cigarettes and the "nature, type, extent and identity of the additives, additions or additional substances" placed in these cigarettes. (Compl. ¶ 24). Count V seeks certification of this action as a class action.

By agreement of the parties, this court requested submissions and held a hearing on the issue of whether or not plaintiff's claims are preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331-1340 (1994). This issue raises a pure question of law. Because this court has determined that the plaintiff's claims are preempted by the Federal Cigarette Labeling and Advertising Act, the defendants are entitled to have their motion for summary judgment granted.

## FACTUAL SUMMARY

As noted above, the motion before the court is purely a question of law, and, therefore, the factual record is relatively undeveloped. However a few facts are relevant to this inquiry. Plaintiff is an Alabama resident who has smoked "off and on since 1969." (Compl. ¶ 6). Defendants are cigarette manufacturers that currently manufacture and which have in the two year period immediately preceding the filing of this action manufactured cigarettes for sale in Alabama. (Compl. ¶¶ 7-9). In fact, defendants have manufactured for sale and have sold cigarettes to

cigarette smokers in the State of Alabama for many years. (Compl. ¶ 10).

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Rule 56 (c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

The parties have agreed that there are no questions of material fact relevant to the issue of whether or not the plaintiff's claims are preempted by the Federal Cigarette Labeling and Advertising Act. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 1. Therefore, the defendants are entitled to summary judgment if they are entitled to judgment as a matter of law.

## DISCUSSION

I.  **The Labeling Act**

The Federal Cigarette Labeling and Advertising Act [hereinafter "Labeling Act"], 15 U.S.C. §§ 1331-1340 (1994), represents a comprehensive federal scheme relating to the labeling and advertising of cigarettes in the United States, including detailed provisions regarding

3

ingredients disclosure. The purpose of the Labeling Act is set forth in section 1331.

> § 1331. Congressional Declaration of Policy and Purpose.
>
> It is the policy of Congress and the purpose of this chapter, [15 U.S.C. §§ 1331-1340] to establish a comprehensive Federal Program to deal with cigarette labeling and advertising with respect to any relationship between smoking and health, whereby --
>
>> (1) the public may be adequately informed about any adverse health effects of cigarette smoking by inclusion of warning notices on each package of cigarettes and in each advertisement of cigarettes; and
>>
>> (2) commerce and the national economy may be (A) protected to the maximum extent consistent with this declared policy and (B) not impeded by diverse, non-uniform, and confusing cigarette labeling and advertising regulations with respect to any relationship between smoking and health.

15 U.S.C. § 1331 (1994). The primary way in which the Labeling Act accomplishes this goal is by requiring warnings on cigarette packages and advertisements.

The Labeling Act requires that manufacturers annually provide the Secretary of Health and Human Services "with a list of the ingredients added to tobacco in the manufacture of cigarettes which does not identify the company which uses the ingredients or the brand of cigarettes which contain the ingredients." *Id.* § 1335a(a). The Labeling Act requires the Secretary of Health and Human Services to transmit reports to Congress based on the ingredients information provided to him. *Id.* § 1335a(b). Specifically, these reports are to address, inter alia, "research activities and proposed research activities on the health effects of ingredients added to tobacco in the manufacture of cigarettes and the findings of such research." *Id.*

The reports of the Secretary of Health and Human Services to Congress regarding the ingredients of cigarettes are kept confidential. *Id.* § 1335a(b)(2). The Labeling Act specifies criminal penalties for violations of its provisions relating to dissemination of ingredients

4

information provided by cigarette manufacturers to the government. *Id.* The right to enforce the Labeling Act is given to the U.S. Attorney General by means of injunction proceedings in the United States district courts. *Id.* § 1339.

> The Labeling Act contains the following preemption provision:
>
> § 1334. Preemption
>
> (a) Additional Statements
> No statement relating to smoking and health, other than the statement required by Section 1333 of this title, shall be required on any cigarette package.
>
> (b) State Regulations
> No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.

*Id.* § 1334.

Therefore, with respect to cigarette ingredients disclosure, Congress has: (1) determined the scope of the defendants' duty, (2) declared the manner in which the duty is to be fulfilled, and (3) decreed that individual states have no authority to impose additional disclosure obligations with respect to the advertising or promotion of cigarettes.

In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992), the Supreme Court addressed preemption under the Labeling Act with respect to a number of state law claims against the manufacturers of cigarettes. Interpreting this opinion is somewhat complicated by the fact that only part of the opinion is directly supported by a majority of the Court. Parts I through IV of Justice Stevens' opinion represent the opinion of the Court, but parts V and VI of his opinion were joined by only three other Justices. Justice Steven's opinion as a whole, however, is ultimately supported by a majority of the Court--the composition of the majority just shifts as the issues

change. In parts V and VI of the opinion, the plurality stated that some state law claims based on the common law were preempted by the Labeling Act and some were not. *See id.* at 523-24. Justices Scalia and Thomas would have held that all state law claims were preempted by the Labeling Act. *See id.* at 544 (Scalia, J., concurring in part and dissenting in part). Justices Blackmun, Kennedy and Souter, on the other hand, would have limited the preemptive effect of the Labeling Act to positive enactments only and not preempted any common law actions. *See id.* at 531 (Blackmun, J., concurring in part and dissenting in part). Therefore, Justice Stevens' compromise position that some common law claims are preempted and some common law claims are not preempted can find support from a majority of the Court at any given point. In fact, many courts see the entire opinion as binding although part of the opinion is directly supported by only a plurality of the Court. *See Griesenbeck v. American Tobacco Co.*, 897 F. Supp. 815, 823 (D.N.J. 1995) (stating that the Third Circuit had acknowledged the binding nature of the plurality opinion). Though not binding on this court, the Alabama Supreme Court summed up the effect of *Cipollone* nicely: "After considering the several *Cipollone* opinions as a whole, we, like the majority of other courts that have attempted to apply the *Cipollone* holding, feel compelled to apply the test and reasoning enunciated by Justice Stevens in the plurality portion of his opinion." *Cantley v. Lorrillard Tobacco Company, Inc.*, 681 So. 2d 1057, 1061 (Ala. 1996). Based on the reasoning above, this court will also treat the entire *Cipollone* opinion, including the plurality portions, as the holding of the Court.

After *Cipollone*, there is no doubt that positive enactments by a state with respect to cigarette labeling and advertising are preempted by the Labeling Act. The question is to what extent state damage actions founded upon the common law are preempted. In *Cipollone*, the

6

plurality held that the Labeling Act expressly preempts certain state law damage actions, including some actions based on the common law:

> The phrase "[n]o requirement or prohibition" sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules.

505 U.S. at 521. The plurality also held that the obligation to pay damages is premised upon common law duties, and those duties impose requirements and prohibitions that may be preempted by the Labeling Act. *Id.*

*Cipollone* rejected the notion that the descriptive label a plaintiff attaches to a particular claim determines whether it is preempted. "Nor does the statute indicate that any familiar subdivision of common law claims is or is not preempted." *Id.* at 523. Rather, preemption analysis applies the following test:

> The central inquiry in each case is straightforward: we ask whether the legal duty that is the predicate of the common law damages action constitutes a "requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion," giving that clause a fair but narrow reading.

*Id.* at 523-24 (ellipses in original). The Court then scrutinized the predicate legal duty imposed by each of the claims before it to determine which were preempted. *Id.*

The claims held to be preempted were broad in scope. The plurality held that any common law failure to warn action is preempted to the extent that is relies on a state law requirement or prohibition with respect to advertising or promotion. *Id.* In other words, "insofar as claims under either failure to warn theory require a showing that respondents' post-1969 advertising or promotions should have included additional, or more clearly stated, warnings, those claims are

preempted." *Id*. The Court also held that claims that the tobacco companies neutralized the effect of the federally mandated warnings through their advertising and promotional activities were preempted. *Id*. at 527. Thus, each of the *Cipollone* plaintiff's claims which was grounded in whole or in part upon any alleged inadequacy of the federally mandated warnings was held to be preempted.

While many claims were held to be preempted, the Court also held that some claims were not preempted. These non-preempted claims included: (1) claims based on a "contractual commitment voluntarily undertaken" and therefore not "regarded as a 'requirement . . . imposed under State Law'" (i.e., breach of express warranty). *Id*. at 524. (2) Fraudulent misrepresentation claims based on allegedly false statements of material fact. In other words, "claims . . . not predicated on a duty 'based on smoking and health' but rather a more general obligation -- the duty not to deceive" (fraud by intentional misstatement). *Id* at 529. (3) Claims based exclusively on actions unrelated to advertising or promotion--i.e., "claims that rely solely on . . . testing or research practices . . . ." *Id*. at 524-525. Finally, (4) claims that rely on a state law duty to disclose information through "channels of communication other than advertising or promotion"--e.g., a state law that obligated tobacco companies to disclose material facts about smoking and health to a state administrative agency. *Id*. at 528.

## II. Application of Preemption Analysis to Plaintiff's Claims

As noted above, the question of whether or not the plaintiff's claims are preempted turns on "whether the legal duty that is the predicate of the common law damages action constitutes a 'requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion.'" *Id*. at 523-24. Therefore, this court must examine the

8

nature of the plaintiff's claims to determine whether or not they fit within the test outlined above.[1]

Count II of the Complaint alleges fraudulent suppression by the defendants. Plaintiff alleges that defendants fraudulently suppressed unspecified "material facts" concerning the ingredients in cigarettes. By so failing to disclose information regarding the ingredients in cigarettes, defendants allegedly engaged in suppression of material facts, to the injury of plaintiff and other Alabama smokers. Plaintiff attempts to fit his suppression claim within one of the exceptions to preemption outlined in *Cipollone*. Plaintiff argues, inter alia, that fraud and concealment by a cigarette manufacturer cannot be preempted because the duty in question is a general duty not to deceive and is not based on smoking and health. For the reasons stated below, this court rejects plaintiff's arguments.

The plurality in *Cipollone* explains that only a narrow types of suppression claims may survive preemption. As noted above, if a state law required the defendants to disclose material facts about smoking and health to an administrative agency, the Labeling Act would not preempt a state law claim based on a failure to fulfill that obligation. *See Cipollone*, 505 U.S. at 528. However, no such obligation exists under Alabama law. Additionally, actions based on intentionally false misstatements of fact do not appear to be preempted by the Labeling Act. Plaintiff does not allege such misstatements by defendants. Rather, plaintiff asserts that more information should have been provided by defendants in the marketing of their products. Because the Labeling Act specifically enumerates what information must be provided by tobacco

---

[1] As a preliminary note, the relevant portions of the Labeling Act went into effect in 1969, the year the plaintiff claims he started smoking. Thus, to the extent the preemption provision of the Labeling Act forecloses any of plaintiff's claims, it forecloses the entire claim because no part of the claim arose prior to 1969.

companies, plaintiff's claims are preempted. If plaintiff were to prevail on his suppression claim, he would be imposing a de facto labeling requirement on the defendants.

Requiring cigarette manufacturers to disclose the ingredients of their cigarettes to plaintiff would be a requirement based on smoking and health. To maintain a fraudulent suppression claim under Alabama law, a plaintiff must prove (1) that the defendant had a duty to disclose and (2) failed to disclose a material fact, (3) that this suppression caused plaintiff to act (the reliance element), and (4) that this suppression caused plaintiff harm. *See Interstate Truck Leasing v. Bender*, 608 So. 2d 716, 719 (Ala. 1992). In this case, plaintiff does not state why he seeks disclosure of this particular information, nor does he allege any particular injury from its non-disclosure. Idle curiosity is not sufficient to maintain a claim for fraudulent suppression. Rather, plaintiff must allege a duty to disclose this information and that he relied upon the alleged omission of information and that he was injured by that omission. Consumers care about the ingredients of the products they consume for primarily health-related reasons. In fact, the list of ingredients in cigarettes would most likely be material only as it related to the health of a plaintiff. Plaintiff's claims regarding the ingredients in cigarettes are essentially claims that with more information he would not have smoked or could have made a more informed choice regarding whether or not to smoke. Such claims are inextricably related to smoking and health. Plaintiff has failed to offer any other plausible theory of how such information could be relevant to consumers.

Plaintiff also asserts that his claims do not relate to advertising and promotion. However, a claim that defendants have a duty to disclose additional information concerning cigarette ingredients unavoidably attacks defendants' advertising and promotion. The Eleventh Circuit

reached a similar conclusion when it applied the *Cipollone* test to the nearly identical preemption provision of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") in *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir.), *cert. denied*, 510 U.S. 913 (1993).[2] *Papas* held that any claim based upon alleged inadequate product information to consumers is necessarily an attack upon the federally mandated label:

> [A]ny claims that point-of-sale signs, consumer notices, or other informational materials failed adequately to warn the plaintiff necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging.

*Id.* at 519. The court went on to state, "[i]f a pesticide manufacturer places EPA-approved warnings on the label and packaging of its product, its duty to warn is satisfied, and the adequate warning issue ends." *Id.*

Attempts to avoid preemption by pleading a duty to provide information from sources unrelated to FIFRA labeling have been recently rejected by the Washington Supreme Court as well:

> Even if [defendants] could have provided additional warnings through a means other than labeling or packaging, however, a requirement that they do so would be premised upon a determination that the EPA-approved labels were inadequate and must be supplemented.
> [C]laims challenging the adequacy of warnings on materials other than the label or package of a product necessarily imply that the labeling and packaging failed to warn the user [and are thus preempted].

*All-Pure Chemical Co. v. White*, 896 P.2d 697, 702 (Wash. 1995).

Consistent with this *Cipollone* analysis, the Alabama Supreme Court has recently held that

---

[2] Courts comparing the similarity of the preemption provisions of the Labeling Act and FIFRA have treated them as virtually identical. "Not even the most dedicated hair-splitter could distinguish these statements." *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 371 (7th Cir. 1993).

11

the Labeling Act preempts an Alabama state law suppression claim:

> Applying Justice Stevens's reasoning first to the question of whether Cantley's fraudulent suppression claim was preempted by federal law, we must conclude that it clearly is. Because § 1334(b) "preempts . . . the imposition of state-law obligations 'with respect to the advertising or promotion' of cigarettes[,]" claims that a cigarette maker concealed facts are preempted insofar as those claims rely on the state law duty to disclose such facts through advertising or promotion methods. A fraudulent suppression claim against a cigarette maker seeking relief based on smoking-related illness or death can avoid federal preemption only if the claim is based "on a state law duty to disclose [the allegedly concealed material] facts through channels of communication other than advertising or promotion."

*Cantley v. Lorillard Tobacco Co., Inc.*, 681 So. 2d 1057, 1061 (Ala. 1996) (alterations in original) (citations omitted). The *Cantley* court went on to conclude that such suppression claims by a consumer must be preempted:

> Because manufacturers in the position of the defendants R.J. Reynolds and Lorillard can ordinarily communicate directly with consumers like Godfrey only through "advertising or promotion" channels of communication, we must conclude that Cantley's fraudulent suppression claims, as pleaded, are inevitably based upon "a state law duty to disclose . . . facts through . . . advertising or promotion" channels of communication and, therefore, that they [are] preempted.

*Id.* (ellipses in original) (citations omitted).

The Fifth Circuit Court of Appeals recently addressed similar issues and held that the Labeling Act preempts fraudulent suppression claims. *Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 171 (5th Cir.), *cert. denied*, 117 S. Ct. 300 (1996). The court stated: "To the extent that plaintiff's claims are based on fraudulent concealment or a failure to warn after 1969, they are preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331-1340." *Id.* (citations omitted). Thus, as the above cited authorities demonstrate, this court must look beyond the descriptive label a plaintiff attaches to a claim in determining whether or not the claim is preempted. If a plaintiff could assert a duty inconsistent with the Labeling Act merely by

12

styling it "fraudulent suppression," the preemption provision of the Labeling Act would be deprived of any meaningful application. Regardless of the label attached to it, a plaintiff's claim based upon an alleged duty of defendants to provide to consumers more information regarding smoking and health than is required by the Labeling Act is preempted.

In counts I and III of the Complaint, plaintiff seeks an injunction requiring defendants to disclose additional information not required by the Labeling Act. Regardless of how the requested information would ultimately be communicated to consumers, through labeling or some other method of dissemination, requiring such disclosure would impose additional disclosure obligations upon defendants that differ from the labeling and disclosure requirements established by the Labeling Act. "A company's attempt to notify its mass market of anything, whether a danger warning or a marketing effort, is considered 'advertising or promotion' under the general usage of those terms, and a state cannot impose requirements on such activities without running afoul of the clear language of *Cipollone*." *Griesenbeck v. American Tobacco Co.*, 897 F. Supp. 815, 823 (D.N.J. 1995). As previously noted, the *Cantley* court held that under Alabama law a fraudulent suppression claim "inevitably" challenges the warnings, involves advertising and promotion and, therefore, is preempted. *Cantley*, 1996 WL 304830 at *3. In Count III, plaintiff asserts that the defendants' actions are unconscionable. The only reason that the defendants' behavior could be unconscionable is that the defendants' warnings and labeling were inadequate. It is precisely this type of claim--that the warnings on cigarette packages and advertising are inadequate--that is preempted by the Labeling Act. *See Cipollone*, 505 U.S. at 524

While not binding on this court, the reasoning in *Vango Media, Inc. v. City of New York* is instructive. In *Vango* the court held that the Labeling Act preempted a local ordinance requiring

13

the display of anti-smoking advertisements. *Vango Media, Inc. v. City of New York*, 829 F. Supp. 572 (S.D.N.Y. 1993), *aff'd*, 34 F.3d 68 (2nd Cir. 1994).[3] The court noted that Congress had "chosen to enact a comprehensive nationwide scheme to regulate cigarette advertising," *id.* at 577, and it determined that local or state governments have no power to second-guess the congressional balance between commerce and adequately informing the public:

> The Local Law is an example of a local government taking into its own hands that which Congress previously determined to regulate itself. . . . It is for Congress, and not a local government, to determine to what extent the messages reaching the public through print advertising should be changed, impeded or contravened for health reasons.

*Id.* at 583 n.18. The court concluded that "the Local Law conditions the legality of displaying cigarette advertisements on compliance with the letter of the Local Law and, therefore, it falls within the scope of the preemption provision." *Id.* at 580.

The present case is even clearer than *Vango*. In *Vango*, the local law required only the display of competing advertisements, but here the plaintiff seeks an additional "statement relating to smoking and health" through disclosure of ingredients. Such a request undermines the very essence of preemption: that individual states "may not interfere with the methods designed by Congress" to achieve its goals. *Papas*, 985 F.2d at 519. Plaintiff's suppression claims directly challenge the adequacy of the congressional warnings and ingredients disclosure scheme and are, therefore, preempted.

---

[3] Finding an analysis of the direct requirement imposed by the statute was "more straight forward" than the analysis detailed in *Cipollone*, the *Vango* court was "convinced that the Local Law at issue in this case is, in fact, a better candidate for preemption than the state law provisions at issue in *Cipollone*." *Id.* at 578.

14

## CONCLUSION

Plaintiff's claims for defendants' failure to disclose and demands to disclose information regarding the ingredients in cigarettes seek to impose a requirement or prohibition based on smoking and health with respect to the advertising or promotion of cigarettes. Such claims are preempted by the Labeling Act. Accordingly, defendants' motion for summary judgment with respect to these claims is due to be granted.

An order granting the defendants' motion for summary judgment will be entered contemporaneously herewith.

DONE this 31st of January, 1997.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
United States District Judge